## Dupree et al. v. Franklin Title & Trust Co.

(Decided March 15, 1938.)

HITE H. HUFFAKER and JOHN R. MOREMAN for appellants.
JOSEPH FOWLER and DODD & DODD for appellee.

OPINION OF THE COURT BY CREAL, COMMISSIONER—
Affirming.

Victor Dupree and his wife are appealing from a judgment dismissing their petition whereby they sought to recover of the Franklin Title & Trust Company the sum of $3,750.

The litigation started in 1928 when appellants filed their action at law against appellee. After various pleadings, motions, etc., had been filed by the respective parties, the cause was transferred to chancery and referred to a commissioner, who, after the evidence had been heard, made an extensive report · recommending that plaintiffs recover the sum sued for, subject to certain credits which reduced the claim to $2,782.45. Thereafter, the chancellor entered a memorandum stating that because of the complicated pleadings it was difficult, if not impossible, to determine what the parties were litigating about, and pursuant to section 114 of the Civil Code of Practice directed, a repleader and ordered that the plaintiffs file a substituted petition pleading their entire cause of action, and that appellee file answer

thereto, pleading its entire defense, and if it pleaded any affirmative defenses same should be considered controverted and no other pleadings should be filed. The parties without objection or exception complied with this order, and therefore we have only to look to the substituted pleadings.

As revealed by pleading and proof, the facts, in so far as pertinent in substance, are that appellants owned a lot on Broadway at Western Parkway in Louisville. In order to finance the construction of an apartment house thereon they executed a mortgage to the Meyer-Kiser Bank of Indianapolis to secure a loan of $75,000, with interest at the rate of 6½ per cent. On February 1, 1926, appellants entered into a refinancing agreement with appellee to secure funds with which to retire the Meyer-Kiser Bank mortgage and some other obligations. To that end they executed a first mortgage to appellee as trustee in the sum of $75,000, and a "no-charge 180 month bond loan" mortgage note, providing for repayment in 180 installments of $750 each and 75 $1,000 bonds. They executed a note in the principal sum of $800 payable to appellee in 30 days, and also a second mortgage to appellee, individually, to secure a second mortgage note of $5,000 payable in 36 monthly installments of $163.88.

In April, 1927, appellants entered into a contract with Waldman Bros. whereby the Broadway property was exchanged for property on the Lexington road with Waldman Bros. agreeing to assume the balance due on the $75,000 mortgage after appellants had paid all installments due thereon up to and including April 12, 1927. In order to secure funds to carry out this transaction, appellants obtained a loan from the Louisville Title Company to be secured by a mortgage on the Lexington road property which they received in exchange. Before deeds evidencing the exchange passed, Waldman Bros. sold the Broadway property to Kaplan & Goldberg. The latter agreed to assume payment of the first mortgage when reduced by payments as above indicated. Before any deeds had been made, Kaplan & Goldberg went to appellee to ascertain the balance due on the first mortgage and entered into a contract with it to pay $3,750 to cover all financing charges and expenses in connection with the $75,000 mortgage. In consideration of such payment appellee agreed that when

the first 153 monthly installments of $750 each had been paid, it would pay out of the proceeds all the bonds against the property secured by the first mortgage lien thereon. When appellants, Waldman Bros., and Kaplan & Goldberg met at the offices of the Louisville Title Company for the purpose of closing the transaction and passing title, Kaplan & Goldberg produced the statement of the Franklin Title & Trust Company, purporting to show the sum which should be paid to it to make the first mortgage current; that is, to take care of all past-due installments with interest and penalties. This statement included the $3,750 claimed by appellee as a financing fee. Kaplan & Goldberg insisted that the $3,750 financing fee should be paid by appellant, but they protested against this. However, on advice of counsel that they pay it rather than block the deal and then bring suit to recover it, appellants' check was made out for this sum, and the parties then went into the offices of appellee where the checks were delivered to it.

It is contended by counsel for appellants that the $800 note was given to appellee to cover all financing fees, expenses, and charges in connection with the first mortgage, and that no other charge was to be made on that account. On the other hand, it is the contention of appellee that this note was given to cover interest on the Meyer-Kiser Bank bonds until they could be taken up. Some of the witnesses for appellee, however, indicated that the $800 was to cover interest on the funds furnished .appellants from the date of the mortgage until the transaction could be completed and the bonds sold. The installment note secured by the mortgage provides for the payment to appellee of all expenses paid and advanced by it, and for services in connection with the mortgage. The evidence for appellee is to the effect that appellants agreed to pay the financing charges and expenses incurred in connection therewith, and a statement of items making up the $3,750 is found in the record and transcript, and there is evidence that these charges are regular and reasonable.

We have carefully gone over the pleadings and evidence and can readily understand from the confused and conflicting state of the record how the commissioner and chancellor arrived at different conclusions. It is undisputed that appellee refunded to appellant $480.55 which

appellee's witnesses claim represents the portion of the $800 in excess of the amount required to pay interest for which it was given. Like the commissioner and chancellor we have attempted to take from pleadings and evidence the figures and to strike a balance, but that is impossible; but we do find that when deducting the $250 financing fee charged in connection with the second mortgage, and about which no question is made, and considering the amounts paid out by appellee for or on account of appellants, the former at least retained only a small portion of the proceeds of the $800 note, and that, in connection with evidence of refund, would indicate that that note was not given to cover financing fees and charges for services in connection with the loan.

Some question is made concerning usury, but in appellants' substituted petition, made pursuant to orders of the court, there is no specific charge of usury, but it is merely charged that the $3,750 was paid in violation of the contract between the parties, and was fraudulent and unwarranted. As disclosed by the record and the evidence, the 180 installments of $750 provided for in the first mortgage note would amount to far more than a sum sufficient to retire the bonds with interest at 6 per cent. as provided, and also far in excess of the additional sum of $3,750, and to that extent it would apparently embrace considerable usury. However, as appears from the evidence under the agreement with Kaplan & Goldberg, it has been purged of any excess charges. It is not claimed that appellee loaned appellants the $75,000, but that it acted as agent and trustee and sold all the mortgage bonds to others. It is a settled doctrine that, in the circumstances shown, appellants might have paid or obligated themselves to pay to appellee a reasonable sum for services and expenses in connection with the $75,000 mortgage without rendering it usurious. Ashland National Bank v. Conley, 231 Ky. 844, 22 S. W. (2d) 270, and cases therein cited. Appellants had no part in the contract whereby Kaplan & Goldberg obligated themselves to pay appellee the $3,750 financing fee, and according to the evidence, appellants, without any duress or compulsion upon the part of appellee, met the obligation assumed by Kaplan & Goldberg, and made and delivered its check to cover it.

There is ample evidence to sustain the chancellor's

conclusion that the $3,750 in controversy did not constitute or embrace usury, and likewise ample evidence to support his denial of recovery; and in such circumstances the judgment under the established rule should not be disturbed, although it may have been based on reasons different from those assigned by us. To say the least, the question would only be a doubtful one as is evidenced by the different conclusions reached by the commissioner and the chancellor, and therefore would call for the application of the rule that where the appellate court is in doubt concerning the correctness of the judgment, it will not be reversed.

Judgment affirmed.